# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| RICKY RAY JOHNSON, SR., § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> NANCY A. BERRYHILL,[1] § <br> Acting Commissioner of Social Security, § <br> § <br> Defendant. § | No. 4:16-CV-0241-O-BL |

## REPORT AND RECOMMENDATION

Pursuant to 42 U. S. C. § 405(g), Plaintiff seeks judicial review of a decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Titles XVI of the Act.[2] *See* Compl. (doc. 1). The Commissioner has filed an answer, *see* Def.'s Answer (doc. 10), and a certified copy of the transcript of the administrative proceedings, *see* SSA Admin. R. [hereinafter "R."] (doc. 12), including the hearing before the Administrative Law Judge ("ALJ"). The parties have briefed the issues. *See* Pl.'s Appeal (doc. 14); Def.'s Br. (doc. 15); Pl.'s Reply (doc. 16). The United States District Judge referred the case to the undersigned pursuant to 28 U.S.C. § 636. After considering the pleadings, briefs, and administrative record, the undersigned recommends that the Commissioner's decision be reversed and remanded for further consideration.

---

[1]On January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), the Court automatically substitutes her as the named defendant.

[2]Title II governs disability insurance benefits, *see* 42 U.S.C. §§ 401-34, and Title XVI governs supplemental security income for the aged, blind, and disabled, *see id.* §§ 1381-1383f. Final determinations under Title XVI are subject to the same judicial review as provided in § 405(g). *See* 42 U.S.C. § 1383(c)(3). The Court will often refer to Plaintiff as Claimant, a designation used in social security cases.

# I. BACKGROUND

Plaintiff initially claimed disability due to arthritis and depression. R. 346. He filed applications for DIB and SSI in May 2013, alleging disability beginning April 12, 2013. R. 248, 264, 274. His date of last insured ("DLI") is September 30, 2017. R. 342. Therefore, the most relevant time period for his application and the Court's review commenced April 12, 2013, and continues through September 2017.

The Commissioner denied the applications initially and on reconsideration. *See* R. 102-59. On September 16, 2014, Administrative Law Judge ("ALJ") Melinda Kirkpatrick held a hearing on Plaintiff's claims. *See* R. 62-101. On November 20, 2014, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled and was capable of performing work that exists in significant numbers in the national economy. R. 43-57. Applying the sequential, five-step analysis set out in the regulations (20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. R. 48. The ALJ next determined that Plaintiff had the following severe impairments: "rheumatoid arthritis; mild degenerative joint disease in bilateral hands; history of right wrist surgery; depressive disorder; and history of polysubstance dependence in remission." *Id.* In making his Step 2 severity determination, the ALJ stated:

> An impairment or combination of impairments is 'severe' within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have been no more than a minimal effect on an individual's ability to work. (20 CFR 404.1521 and 416.921, Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p).

Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that

met or equaled the severity of any impairment in the listings.[3] R. 49-50.

The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC")[4] to perform a limited range of light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b).[5] R. 50. In addition to the usual light-work requirement of lifting/carrying ten pounds frequently and twenty pounds occasionally, the ALJ also specifically found that Plaintiff had the RFC to (1) stand/walk for six hours in an eight-hour workday; (2) sit for six hours; (3) balance, stoop, kneel, crawl, and crouch occasionally, but no climbing; and (4) handle and finger bilaterally frequently. *Id.* Plaintiff also had one environmental restriction – "no exposure to unprotected heights." *Id.* Despite his psychological limitations, Plaintiff could "understand, remember, and carry out routine and repetitive, up to 5-step, instructions; make work-related decisions; attend and concentrate for extended periods of up to 2 hour intervals," have occasional interaction with others, "and respond appropriately to changes in a routine work setting." R. 50-51. Alternatively, the ALJ added a sit/stand option that permitted alternating positions so long as the individual could "maintain either position for 45 minutes to one

---

[3] Sections 404.1525 and 416.925 explain the purpose and use of the listings of impairments.

[4] Sections 404.1545(a)(1) and 416.945(a)(1) explain that a claimant's RFC "is the most [he or she] can still do despite [his or her] limitations." When a case proceeds before an ALJ, it is the ALJ's sole responsibility to assess the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). However, that assessment must be "based on all of the relevant medical and other evidence" of record. *Id.* §§ 404.1545(a)(3), 416.945(a)(3).

[5] The regulations address physical exertion requirements and explain:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(a).

hour." R. 51. This alternative RFC also permits being off task, so long as "it is for less than 10% of the workday." *Id.*

Based upon the RFC determination and testimony from a vocational expert ("VE") about the exertional demands and skill requirements of Plaintiff's prior jobs, the ALJ concluded that Plaintiff could not perform his past relevant work, but could perform jobs that exist in significant numbers in the national economy. R. 55-56. The VE identified multiple light, semi-skilled jobs that would be available for a hypothetical person with an RFC consistent with that assessed for Plaintiff. *See* R. 56. At Step 5 of the evaluative sequence, the ALJ thus found that Plaintiff was not disabled within the meaning of the Social Security Act between April 12, 2013, and the date of the ALJ's decision. R. 57.

The Appeals Council received and considered an attorney brief (Ex. 15E) when it denied review on March 24, 2016. *See* R. 1-6. It also "looked at" a six-page report from Kirsi Waller, Ph.D., dated February 25, 2015; reports from March 2015 of Goodwill Evaluation Services; a February 11, 2015 report from Arlington Pain and Therapy; and an August 10, 2015 report from Zubar Latif, D.O., but found this new information is for a period of time after the ALJ's decision and thus "does not affect the decision about whether you were disabled beginning on or before November 20, 2014." R. 2. The Appeals Council informed Plaintiff that if he wants the agency "to consider whether you were disabled after November 20, 2014," he needs to apply again and the new information that he submitted would be available in his electronic file for use in his "new claim." *Id.* The ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

4

Plaintiff commenced this social security appeal on March 31, 2016. *See* Compl. He presents three issues for review within the context of a lack of substantial evidence to support the Commissioner's decision to deny benefits. *See* Pl.'s Appeal at 1-2.

## II. LEGAL STANDARD

In general,[6] a person is disabled within the meaning of the Social Security Act, when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)-(b)); *accord* 20 C.F.R. § 416.972(a)-(b). To evaluate a disability claim, the Commissioner employs the previously mentioned

> five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.

*Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). If, at any step, the Commissioner determines that the claimant is or is "not disabled, the inquiry is terminated." *Id.* at 448. The Commissioner must assess the claimant's RFC before proceeding to Steps 4 and 5. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). For Steps 1 through 4, the claimant has the burden to show disability, but the Commissioner has the burden at Step 5 to "show that there is other substantial work in the

---

[6]The Act provides an alternate definition of disability for individuals under the age of eighteen, *see* 42 U.S.C. § 1382c(a)(3)(C), and blind individuals who are fifty-five years of age or older, *see* 42 U.S.C. § 423(d)(1)(B). These provisions are inapplicable on the current facts.

national economy that the claimant can perform." *Audler*, 501 F.3d at 448. If the Commissioner carries that Step 5 burden, "the burden shifts back to the claimant to rebut th[e] finding" that he or she can perform other work that is available in the national economy. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

"Judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards are applied." *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015) (quoting *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton*, 209 F.3d at 452). "In applying the substantial evidence standard, the court scrutinizes the record to determine whether such evidence is present, but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez*, 415 F.3d at 461. The courts neither "try the questions *de novo*" nor substitute their "judgment for the Commissioner's, even if [they] believe the evidence weighs against the Commissioner's decision." *Masterson*, 309 F.3d at 272. The Commissioner resolves conflicts of evidence. *Sun*, 793 F.3d at 508.

### III. ANALYSIS

This appeal raises the following issues: (1) whether the Appeals Council erred in determining that new evidence submitted to it was immaterial because it was after the date of the ALJ's decision; (2) whether the ALJ properly considered the opinion of a agency consultant that found Claimant was limited to "simple" work; and (3) whether the ALJ erred in her definition of severe impairment in contravention of *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). *See* Pl.'s Appeal at 1-2.

**A. Appeals Council Review of the Evidence**

Claimant contends that the Appeals Council ("AC") failed to evaluate new and material evidence submitted to it. Pl.'s Appeal at 7-10. The Commissioner contends that the submitted evidence provides no basis to remand for further administrative proceedings. Def.'s Br. at 3-4.

In this case, the Appeals Council did not accept any newly submitted medical evidence, but did accept a brief from Claimant's attorney. *See* R. 6. That seven-page brief is included in the administrative record as Exhibit 15E and it discusses the medical evidence submitted to the AC. *See* R. 420-26. The AC "considered the reasons" Claimant disagrees with the ALJ's decision as set out in the brief, but found "this information does not provide a basis for changing the Administrative Law Judge's decision." R. 2. It also "looked at" the reports submitted with the brief, but found the information relevant only for a time period after the ALJ's decision and, therefore, "it does not affect the decision about whether [claimant was] disabled beginning on or before November 20, 2014." *Id.* Rather than accept the submitted reports as evidence of record, the AC informed Claimant that "[i]f you want us to consider whether you were disabled after November 20, 2014, you need to apply again" and further informed him that the newly submitted records would be available in his electronic file for use in his "new claim."[7] *Id.* The submitted reports are found within the administra

---

[7]Although the AC does not cite to any regulatory provision, it appears to have invoked the procedures for review set out for Title II in 20 C.F.R. § 404.976(b)(1) and for Title XVI in 20 C.F.R. § 416.1476(b). As it existed when the AC denied review in 2016, § 404.976(b)(1) provided:

> The Appeals Council will consider all the evidence in the administrative law judge hearing record as well as any new and material evidence submitted to it that relates to the period on or before the date of the administrative law judge hearing decision. If you submit evidence that does not relate to the period on or before the date of the administrative law judge hearing decision, the Appeals Council will explain why it did not accept the additional evidence and will advise you of your right to file a new application. The notice will also advise you that if you file a new application within 6 months after the date of the Appeals Council's notice, your request for review will constitute a written statement indicating an intent to claim benefits in accordance with § 404.630. If you file a new application within 6 months of the date of this notice, we will use the date of the request for review as the filing

tive record as attorney supplied evidence without exhibit number. *See* R. 8-32.

When "deciding whether to deny the claimant's request for review, the AC must consider and evaluate any 'new and material evidence' that is submitted, if it relates to the period on or before the ALJ's decision." *Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015) (quoting 20 C.F.R. § 404.970(b)).[8] The AC grants or denies a request for review in accordance with regulations that "do not require the AC to provide a discussion of the newly submitted evidence or give reasons for denying review." *Id.* When the AC considers additional, submitted evidence, "the only question is whether the Appeals Council erred in concluding that the new evidence did not make the ALJ's decision 'contrary to the weight' of the record evidence on the whole." *Hardman v. Colvin*, 820 F.3d 142, 150 (5th Cir. 2016). If the reviewing court can determine that substantial evidence supports the denial of benefits, the AC does not err in declining to review a case even when the claimant submits "significant" new and material evidence which "casts doubt on the soundness of the ALJ's findings." *Id.* (quoting *Sun*, 793 F.3d at 511-12).

The district courts simply do not consider whether the Appeals Council properly considered

---

date for your application.

Section 416.1476(b) is materially the same.

[8]Section 404.970(b) relates to Appeals Council review in Title II cases. Its counterpart for Title XVI cases is 20 C.F.R. § 416.1470(b). The two regulations are materially the same so this recommendation will focus on § 404.970(b). As it existed until January 17, 2017, § 404.970(b) stated:

If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

This prior version applied when the AC denied review in this case in 2016.

newly submitted evidence. The final decision of the Commissioner includes the denial of a request for review and any new evidence submitted to the AC. *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). The record on appeal to the district courts includes "the evidence submitted for the first time to the Appeals Council," because 42 U.S.C. § 405(g) states that the appellate record will include "the evidence upon which the findings and decision complained of are based." *Id.* Furthermore, when the Appeals Council considers and evaluates newly submitted evidence "that evidence constitutes 'evidence upon which the decision complained of is based.'" *Id.* (quoting § 405(g)). It is not the purpose of judicial review to decide whether the AC erred in denying a request for review. Although a denial of a request for review "becomes part of the Commissioner's final decision," it is the ALJ's decision that remains binding on the claimant. *Sun*, 793 F.3d at 511.

While the courts do not consider whether the Appeals Council properly considered submitted evidence, they do review whether the Appeals Council applied appropriate legal standards. *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014) (precedent "requires the Appeals Council to apply the correct legal standards in performing its duties"). Sections 404.970(b) and 416.1470(b) require the Appeals Council to consider additional evidence that is new, material, and relates to the proper time period. They also mandate that the AC evaluate the entire record including any such additional evidence. Sections 404.976(b)(1) and 416.1476(b)(1) set out the same requirements while also addressing the procedure for submitted evidence that does not relate to the proper time period – (1) explain why the AC did not accept such evidence and (2) advise the claimant of his or her right to file a new application.

The courts have recognized these regulatory mandates. The "regulatory scheme" requires the AC to "consider new and material evidence . . . in deciding whether to grant review." *Meyer v.*

9

*Astrue*, 662 F.3d 700, 706 (4th Cir. 2011) (quoting *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95 (4th Cir. 1991) (en banc) (relying upon various cases including *Dorsey v. Heckler*, 702 F.2d 597, 602 n.7 (5th Cir. 1983), *disavowed on other grounds*, *Johnson v. Heckler*, 767 F.2d 180 (5th Cir. 1985))). Further, upon submission of new and material evidence, "the Appeals Council must reevaluate the entire record as supplemented to determine whether the weight of the evidence has now shifted in the claimant's favor." *Dorsey*, 702 F.2d at 602 n.7.

No one disputes the newness of the submitted evidence in this case, but the parties disagree on its materiality. Claimant, moreover, argues that the Commissioner completely failed to consider the new evidence because it was subsequent to the date of the ALJ's decision. To be material, new evidence must create "a reasonable possibility that it would have changed the outcome of the [Commissioner's] decision" and "materiality impliedly requires evidence to 'relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously nondisabling condition." *Thomas v. Colvin*, 587 F. App'x 162, 165 (5th Cir. 2014) (per curiam); *accord Johnson*, 767 F.2d at 183. Although the regulations set out materiality and relationship to proper time period separately, evidence is immaterial unless it relates to the proper time period. *Thomas*, 587 F. App'x at 165 n.30 ("materiality encompasses the third requirement for consideration of additional evidence by the Appeals Council, i.e., that the evidence relates to the period before the ALJ's decision, since only such evidence which relates to the time period for which benefits were denied can affect the outcome of the Commissioner's decision"). Of course, evidence may be immaterial even if it relates to the proper time period.

With respect to the new evidence submitted to the AC in this case, the AC invoked the procedures in 20 C.F.R. §§ 404.976(b)(1) and 416.1476(b)(1) when it advised Claimant to file a new

10

application and explained why it did not accept the submitted reports. Although the AC "looked at" the reports, the obvious implication is that it did so only to ascertain whether the reports related to the relevant time period. Having concluded that they related to a time period after the ALJ's decision, the AC did not further consider the reports and only accepted the attorney's brief that discussed the reports.

Claimant argues that the "Commissioner's position that information dated subsequent to the date of the ALJ's decision is not relevant to that decision, would render meaningless the requirement that the Appeals Council apply the same standards to evaluate medical opinion evidence as are required of the ALJ (20 CFR 404.1527(f)(3))." Pl.'s Reply at 2. That requirement becomes applicable, however, only when the AC actually reviews the case and makes a decision, not when it denies a request for review. *See Sun*, 793 F.3d at 511; *Meyer*, 662 F.3d at 705-06.

Nevertheless, Claimant is correct that the date of particular information does not of itself dictate that the information is unrelated to the period before the ALJ rendered his or her decision. The Social Security Administration has long recognized that subsequent evidence may be relevant to a claimant's condition at an earlier time. *See* Titles II and XVI: Onset of Disability, SSR 83-20 (PPS-100), 1983 WL 31249, at *3-4 (S.S.A. 1983). Likewise, the Fifth Circuit has held that "[r]etrospective medical diagnoses constitute relevant evidence of pre-expiration disability." *Likes v. Callahan*, 112 F.3d 189, 191 (5th Cir. 1997); *accord Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000). Moreover, §§ 404.970(b), 416.1470(b), 404.976(b)(1), and 416.1476(b)(1) use the broad phrase – "relates to the period on or before the date of the administrative law judge hearing decision." By using "relates to" these regulations do not narrowly confine new evidence to records or reports dated on or before the ALJ's decision. Given the above-cited legal principles and the text of the regulations,

the AC applies an erroneous standard if it narrowly construes the regulations as drawing a bright-line based upon the date of submitted evidence. While the date is undoubtedly relevant, the date alone does not make the evidence unrelated to time period on or before the ALJ's decision. *Wilkins* provides a perfect example that a letter dated June 16, 1988, was related to the period on or before the ALJ's decision of June 1, 1988. *See* 953 F.2d at 94-95. Naturally, the more time that elapses between the ALJ's decision and the creation of the new evidence, the greater the probability that the new evidence is unrelated to the period on or before the ALJ decision.

With respect to the new evidence submitted to it in this case, the AC states: "The Administrative Law Judge decided your case through November 20, 2014. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before November 20, 2014." R. 2. In this context, the word "about" is essentially the same as "related to." It thus seems that the AC found the new evidence immaterial simply because it related to a time after the ALJ decision. Applying such a standard is error. The fact that evidence relates to a period after the ALJ decision does not preclude it from also relating to the earlier period.

Although all of the newly submitted evidence is dated after the date of the ALJ decision, most, if not all, of it appears related to Claimant's condition prior to that decision. The submitted evidence consists of (1) a Functional Capacity Evaluation conducted by Arlington Pain & Therapy on February 11, 2015, and a completed Work Restriction Checklist of that same date (R. 28-32); (2) a Psychological Evaluation of February 12, 2015, conducted by Dr. Waller (R. 10-15); (3) a Vocational Evaluation Report conducted by Goodwill Evaluation Services for three days in March 2015 (R. 16-27); and an August 10, 2015 Physician's Statement from Dr. Latif, which merely states that Plaintiff has a permanent disability that prevents him from working (R. 8-9). While the Physician's

Statement is conclusory and does not qualify as a medical opinion within the meaning of the Social Security regulations,[9] the Psychological Evaluation of Dr. Waller includes numerous medical opinions that were not before the ALJ. Likewise the reports from Goodwill and Arlington contain various opinions and information not before the ALJ.

Notably, there is no indication in the record that the new evaluations and opinions are the result of any sudden change in Plaintiff's condition or that an intervening event has worsened his condition. Courts may reasonably infer that a medical report relates to the proper time period when "there is no indication that plaintiff's condition deteriorated during the intervening period." *Bailey v. Astrue*, No. Civ.A. 08-1795, 2010 WL 452122, at *4 (W.D. La. Feb. 8, 2010) (accepting recommendation of Mag. J.). Similarly, courts may reasonably infer that a medical evaluation relates to the proper time period when any decline in a claimant's condition appears to have "occurred over a long period of time, and not simply within the few intervening months between the evaluations and the ALJ's decision." *Works v. Colvin*, No. 13-CV-12570, 2014 WL 3819338, at *8 (E.D. Mich. Aug. 4, 2014) (accepting recommendation of Mag. J.). Given the lack of any apparent intervening cause for the new opinions about Claimant's condition and impairments, the Court should view the evidence from Arlington Pain, Dr. Waller, and Goodwill as related to the relevant time period. The conclusory nature of the statement of Dr. Latif and the greater lapse of time between it and the ALJ decision make it more uncertain that the statement relates to the relevant period, but the Court may

---

[9]As explained to claimants: "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (effective Aug. 24, 2012, to Mar. 26, 2017). These regulations, however, reserve some issues to the Commissioner "because they are administrative findings that are dispositive of a case" – opinions on such issues do not constitute medical opinions under the regulation. *Id.* §§ 404.1527(d), 416.927(d).

assume without deciding that it also relates to the relevant period.

Because the evidence relates to the relevant time period, the regulations required that the Appeals Council consider it, but it did not do so. It instead merely considered the brief of the attorney. Considering an attorney brief, which discusses the new evidence, is not the same as considering the evidence itself. Arguments and statements of counsel are not evidence and are not an apt substitute for considering submitted records. Had the AC evaluated the evidence it would have considered whether the evidence created a reasonable possibility that it would have changed the outcome of the ALJ.

"Although '[t]he regulations do not require the AC to provide a discussion of the newly submitted evidence or give reasons for **denying** review,' in some instances remand [may] be necessary if it is unclear whether the AC evaluated the new evidence." *Nejmeh v. Colvin*, No. 4:14-CV-816-Y, 2016 WL 642518, at *2 (N.D. Tex. Feb. 18, 2016) (quoting *Sun*, 793 F.3d at 512). Here it appears clear that the AC did not evaluate the new evidence. Further, it is not the role of the courts to evaluate the materiality of the new evidence "in the first instance." *Miles v. Berryhill*, No. 3:16-CV-1013-N-BK, 2017 WL 2535855, at *5 (N.D. Tex. May 6, 2017) (recommendation of Mag. J.), *accepted by* 2017 WL 2533435 (N.D. Tex. June 9, 2017). Nor is it the courts' role to determine the "credibility or weight it should be afforded, or the medical evidence relied upon for its creation" because such "power lies exclusively with the Commissioner." *Id.* As mentioned earlier, when the Appeals Council considers and evaluates newly submitted evidence "that evidence constitutes 'evidence upon which the decision complained of is based.'" *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) (quoting § 405(g)). Conversely, when the AC has not considered and evaluated such evidence, the evidence does not constitute an evidentiary basis for the decision. For all of these

reasons, the failure of the AC to consider and evaluate newly submitted evidence that relates to the relevant time period is reversible error.

Additionally, remand is necessary when the court "cannot determine whether substantial evidence support the ALJ's denial of benefits." *Meyer*, 662 F.3d at 707; *accord Sun*, 793 F.3d at 512-13. Generally, courts "must examine all of the evidence, including the new evidence submitted to the AC, and determine whether the Commissioner's final decision to deny [the claimant's] claim was supported by substantial evidence." *Sun*, 793 F.3d at 510. But as noted above, the failure of the AC to consider and evaluate the new evidence essentially means that the evidence is not an evidentiary basis for the decision and does not become part of the Commissioner's final decision. Under these circumstances, the Court should find that it is unable to determine whether substantial evidence supports the ALJ's denial of benefits.

Even if the Court were to consider the newly submitted evidence as part of the evidentiary basis for the decision to deny benefits, it should make that same finding. Although the statement of Dr. Latif provides no reasonable possibility of any altered outcome,[10] the other evidence adds significant opinions regarding Claimant's impairments and his ability to work in a sustained capacity. Given the significance of these opinions on matters directly related to the denial of benefits, the evidence provides a reasonable possibility that it would have changed the Commissioner's decision. Had the AC considered and evaluated the materiality of the newly submitted evidence, a reasonable possibility exists that it would have found the evidence material and remanded the matter to the ALJ for further consideration in light of the newly submitted evidence. At that point, the ALJ would have

---

[10]With respect to that statement, there is essentially no doubt that the conclusory statement on an issue reserved to the Commissioner would not have altered the ALJ's decision.

weighed the evidence and determined its credibility.

The Commissioner argues that a physical therapist prepared the Arlington report and that she is not "an acceptable medical source" under the regulations. Def.'s Br. at 4. However, because "ALJs must consider all relevant evidence when making a disability determination, they must consider opinions from medical sources who are not acceptable medical sources." *Jorgensen v. Berryhill*, No. 4:15-CV-0889-O-BL, 2017 WL 785805, at *10 (N.D. Tex. Feb. 9, 2017) (recommendation of Mag. J.) (citations and internal quotation marks omitted) *accepted by* 2017 WL 770617 (N.D. Tex. Feb. 28, 2017). The fact that a physical therapist prepared one report does not make the report immaterial. That fact instead goes to the weight of the report not whether it should be considered.

The circumstances of this case are similar to another Social Security appeal recently resolved in the Northern District of Texas. *See Miles v. Berryhill*, No. 3:16-CV-1013-N-BK, 2017 WL 2535855, at *3 (N.D. Tex. May 6, 2017) (recommendation of Mag. J.), *accepted by* 2017 WL 2533435 (N.D. Tex. June 9, 2017). Like this case, the Appeals Council in *Miles* "acknowledged the new evidence, but concluded that the 'new information is about a later time' since the ALJ issued his decision" earlier. *Id.* at *3. The Court found that the Commissioner had committed reversible error when the Appeals Council failed to evaluate the substance of a material medical report related to the relevant time period. *Id.* at *4-5. Because the AC had not evaluated the evidence, there "were no findings regarding [the new] opinion and no attempts to reconcile it with other evidence in the record." *Id.* at *5.

For all of these reasons, the Court should find that the Appeals Council committed reversible error when it failed to consider and evaluate newly submitted evidence that relates to the time period in question. It is important to emphasize that the error arises because the Appeals Council did not

consider and evaluate the evidence, not that it improperly considered the evidence. Improper consideration differs materially from a failure to consider and evaluate.

## B. Other Issues

In light of the reversible error by the Appeals Council, there is no need to address the other errors alleged by Claimant. The Court, however, may provide appropriate direction to the ALJ on remand.

Claimant alleges that the ALJ failed to evaluate a medical opinion of a Social Security consultant that he is limited to understanding, remembering, and carrying out only simple instructions and making simple decisions. He contends that such opinion is contrary to the ALJ's finding that he can understand, remember, and carry out up to five-step instructions. On remand, the ALJ should explain this apparent conflict when she considers the new evidence submitted to the Appeals Council that also concerns Claimant's mental capabilities.

Claimant lastly alleges that the ALJ erred at Step 2 by stating an improper standard for severity as set out in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). The Commissioner seems to concede this error but argues that it provides no basis to reverse and remand because the ALJ proceeded past Step 2 and determined the claims at Step 5. As briefed by the parties, there is a significant disagreement within the Northern District of Texas as to whether a harmless error analysis should apply when the ALJ commits a *Stone* error while also proceeding past Step 2 to make the ultimate disability determination. Given the reversible error of the AC in this case, there is no reason to wade into that disagreement. However, because the Commissioner appears to concede error under *Stone*, the Court should direct the ALJ to comply with *Stone* on remand.

The Social Security Administration has had more than thirty years since the *Stone* decision

to develop an adequate system for compliance, but as shown by the continued emergence of alleged *Stone* errors, the SSA apparently has either failed in that regard or believes that its ALJs are in compliance. If it is the former, the SSA should take appropriate steps to have ALJs comply, including having the Appeals Council remand decisions of ALJs who do not comply with the *Stone* standard. If the latter is the case, it seems odd that the SSA has not presented a good faith argument for such belief.

## IV. CONCLUSION

For the reasons set forth in this Report and Recommendation, the Court should find that the Appeals Council committed reversible error. The undersigned thus **RECOMMENDS** that the district court **REVERSE** the Commissioner's decision to deny benefits and **REMAND** this case for further administrative proceedings consistent with this recommendation. On remand the Commissioner shall consider the evidence submitted to the Appeals Council and address the other issues as set out in this recommendation.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the

District Court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED this 26th day of June, 2017.**

**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**